DEBORAH G. LEVINE
CA State Bar #57606
1299 Newell Hill Place, Suite 300
Walnut Creek, CA 94596
Attorney for Defendant
THOMAS PEREZ JEWELL

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS PEREZ JEWELL,<br><br>Defendant. | CASE NO. CR-10-00898 PJH<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE PURSUANT TO THE 5th AMENDMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: October 12, 2011<br>Time: 1:30 p.m.<br>Dept.: Hon. Phyllis J. Hamilton |

**TO: UNITED STATES OF AMERICA, PLAINTIFF; MELINDA HAAG, UNITED STATES ATTORNEY; AND JOSUA HILL AND MI YUNG PARK, ASSISTANT UNITED STATES ATTORNEYS**

PLEASE TAKE NOTICE that on October 12, 2011, at 1:30 p.m., in the courtroom of the Honorable Phyllis J. Hamilton, of the above-entitled court, the defendant THOMAS PEREZ JEWELL will move to suppress all statements he made to law enforcement agents on November 18, 2010 on the grounds that such statements were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and the Fifth Amendment to the United States Constitution.

This motion is based on the instant notice and motion, the following memorandum of points and authorities, all other applicable constitutional, statutory, and case authority, and such evidence and argument as may be presented at the hearing of this motion.

Dated: Respectfully submitted,

/s/
DEBORAH G. LEVINE
Attorney for Defendant
THOMAS PEREZ JEWELL

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... **3**

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... **4**

**STATEMENT OF FACTS** .......... **4**

**ARGUMENT** .......... **6**

**1. Evidence of the defendant's statements at his home should be excluded because Defendant Jewell was interrogated in violation of *Miranda v. Arizona*.** .......... **6**

**2. Because the defendant invoked his right to counsel, any subsequent statements in response to questions from the interrogating officer should be excluded from evidence.** .......... **9**

**CONCLUSION** .......... **10**

# TABLE OF AUTHORITIES

**CASES**

*Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) .............................. 6

*Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) .......................................... 9

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ............................. 1, 5, 6, 7, 9

*Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990)..................................... 9

*Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) ........................................ 6

*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008) ......................................................... 6, 7, 8, 9

*United States v. Revels*, 510 F.3d 1269 (10th Cir. 2007)............................................................................ 8

**CONSTITUTIONAL PROVISION**

U.S. CONST., amend. V............................................................................................................... 1, 6, 9

**OTHER AUTHORITY**

Robert Frost, The Death of the Hired Man, *in* THE POETRY OF ROBERT FROST 38 (Edward C. Latham ed., 1967)......................................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

On November 18, 2010 at 7:00 a.m. eight law enforcement officers from three different agencies arrived at apartment G at 71 Massolo Dr. in Pleasant Hill, California to serve a search warrant. [TPJ00037].[1] Officer Jason Kleven of the Pleasant Hill Police Department knocked on the door which was answered by Thomas Jewell. The events which followed were recorded. The recorded events were then summarized by Officer Kleven in a police report. [TPJ00036-42].

After answering the door, Mr. Jewell was ordered out by Officer Todd Jung and was handcuffed outside by Officer Kleven. [TPJ00038, TPJ00044]. Officer Kleven had Mr. Jewell's name and address which were obtained from Comcast. [TPJ00038]. Before handcuffing Mr. Jewell, Officer Kleven asked him if anyone else lived there. [Rec.0.14-0.50][2]. After being handcuffed Mr. Jewell was told by Officer Kleven that he and the other officers were there regarding the distribution of child pornography. [Rec.1.29]. Officer Kleven asked Mr. Jewell what his involvement was with the child pornography. [Rec. 1.45]. Instead of answering that question, Mr. Jewell responded that he wanted to see the warrant. [Rec. 1.57]. The officer followed up with another question, asking whether this was something Jewell just stumbled on and what his interest was in this material. Mr. Jewell replied that he did not want to say anything until he saw the warrant. [Rec. 2.00]. Officer Kleven continued to ask questions, asking how many computers were in the house. [Rec. 2.29]. Mr. Jewell responded, two.

At this point Officer Kleven produced a copy of the search warrant and provided Mr. Jewell with his glasses to read it. [Rec.3.05]. Officer Kleven said that the "computer guys" intercepted images from Jewell's house. He also stated that they were there for distribution of child pornography. Officer Kleven then asked if this was stuff Mr. Jewell just looked at or distributed. [Rec.4.27]. He

---

1 All references to "TPJ" are bates numbered documents provided by the government in discovery and are attached as exhibits to Defendant's Motion to Suppress Pursuant to the Fourth Amendment..

2 References designated "Rec." herein are to the recording of the interview of Mr. Jewell provided by the government in discovery. The time indicated in brackets reflects the number of minutes and seconds into the recording where the referenced statement is found. A copy of this recording on CD will be provided to the court. A transcript has been ordered but has not yet been received.

asked, "is this a bigger thing". Mr. Jewell responded by asking what Officer Kleven meant by "a bigger thing". [Rec. 5.03]. Officer Kleven replied asking if this was for personal use.

Thomas Jewel then stated, "I am not going to say anything now". [Rec. 5.40]. Officer Kleven continued to ask more questions. He asked how old Mr. Jewell's children were, whether they had access to the computer, who he worked for, whether he worked with children at juvenile hall and then said that honesty is the best avenue. [Rec. 7.55]. Officer Kleven also asked Mr. Jewell following this suggestion about honesty whether anyone else was involved in this. Mr. Jewell replied that he did not understand what the officer meant. [Rec. 8.30]. Officer Kleven replied that that was why he was asking if Jewell was the only one who uses the computer. [Rec. 8.40]. Mr. Jewell replied that he was the only one who used the computer. Officer Kleven then asked how long Mr. Jewell had lived at the apartment and for his phone number. He asked about Mr. Jewell's children and where they live. [Rec. 13.28]. Officer Kleven asked what kind of computers were in the apartment and Jewell answered one laptop and one PC. [Rec. 15.09]. Officer Kleven then told another officer, "he doesn't want to make a statement right now". [Rec. 15.24].

Subsequently, the defendant was arrested and taken to the Pleasant Hill Police Department where he was again questioned. [TPJ-00039, 00040.] At that time, the defendant was advised of his *Miranda* rights. [TPJ-00040.] When asked about images on his hard drive, the defendant said "No, I would like to seek counsel before I answer any questions." [TPJ-00040.] Subsequently, during booking, the interrogating officer asked the defendant when he was planning on leaving for Germany. [TPJ-00040.] The defendant said "that he had already purchased a plane ticket to Germany that departed the U.S. on 12-04-10." [TPJ-00040.]

## ARGUMENT

### 1. Evidence of the defendant's statements at his home should be excluded because Defendant Jewell was interrogated in violation of *Miranda v. Arizona*.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST., amend. V. In *Miranda v. Arizona*, the United States Supreme Court interpreted the Fifth Amendment as requiring prophylactic procedural measures to guarantee that a suspect is advised of his rights before custodial interrogations. 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Dickerson v. United States*, 530 U.S. 428, 438-40, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

In cases where a person has not been arrested, a person is nevertheless considered "in custody" for purposes of *Miranda* if the person has been "deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. 1602. To determine whether a person was in custody, the courts must look at the totality of the circumstances surrounding the interrogation. *See Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). If a reasonable person in those circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave" that person is considered to be in custody. *Ibid*. Even an interrogation conducted in a person's home can become custodial, for purposes of *Miranda*, when law enforcement officers create a sufficiently "police-dominated atmosphere" in the home. *United States v. Craighead*, 539 F.3d 1073, 1083-84 (9th Cir. 2008).

In *Craighead*, the Ninth Circuit held in a case almost identical to the instant case, that officers who went to the defendant's home to serve a search warrant, created a "police dominated atmosphere" such that the defendant was "in custody" within the meaning of *Miranda*. *Id.* at 1085-89. This was true, despite the fact that the lead officer was a woman, was much smaller than the defendant, that the defendant was a healthy and strong man, was an electronic technician with the Air Force and was in the company of an Air Force Sergeant who came to defendant Craighead's house with law enforcement in order to act as emotional support for the suspect. *Id.* at 1078, 1086, 1087.

The lead FBI agent in *Craighead* introduced herself and told the defendant that she would like to talk to him about the warrant [related to their investigation of his involvement in child pornography].

She also told him "that he was not under arrest, that any statement he might make would be voluntary, and that he would not be arrested that day regardless of what information he provided." *Id*. at 1078. The agent even expressly told the defendant that he was free to leave. *Ibid*. Several law enforcement agents then interviewed the defendant for 20-30 minutes in a storage room near his kitchen. *Ibid.* They did not read him *Miranda* warnings. *Id*. at 1079. The defendant was not arrested after the interrogation. *Id*. at 1079.

The court in *Craighead* recognized that the question of whether someone is in "custody" for purposes of *Miranda* takes on a different meaning when the interrogation at issue occurs in the suspect's home:

> The usual inquiry into whether the suspect reasonably believed he could 'leave' the interrogation does not quite capture the uniqueness of an interrogation conducted within the suspect's home. 'Home,' said Robert Frost, 'is the place where, when you go there, they have to take you in.' Robert Frost, The Death of the Hired Man, *in* THE POETRY OF ROBERT FROST 38 (Edward C. Latham ed., 1967). If a reasonable person is interrogated inside his own home and is told he is 'free to leave,' where will he go? The library? The police station? He is already in the most constitutionally protected place on earth. To be 'free' to leave is a hollow right if the one place the suspect cannot go is his own home.

*Id.* at 1082-83. The court consequently held that "when applying *Miranda* to the task of sorting a non-custodial in-home interrogation from a custodial one, our analysis considers the extent to which the circumstances of the interrogation turned the otherwise comfortable and familiar surroundings of the home into a 'police-dominated atmosphere.'" *Id.* at 1083-84. That inquiry focuses on the following factors: "(1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made." *Id.* at 1084.

In *Craighead*, the court held that the presence of "eight law enforcement officers, representing three different law enforcement agencies" weighed in favor of finding that the defendant was in custody at the time of the interrogation. *Id.* at 1084-85.

> When a large number of law enforcement personnel enter a suspect's home, they may fill the home such that there are no police-free rooms or spaces to which the suspect may retreat should he wish to terminate the interrogation. Similarly, when the number of law enforcement personnel far outnumber the suspect, the suspect may reasonably believe

> that, should he attempt to leave, he will be stopped by one of the many officers he will encounter on the way out. The suspect may also believe that the large number of officers was brought for the purpose of preventing his departure.

*Id.* at 1084-85. In the instant case, as in *Craigland*, there were eight law enforcement officers, representing three different law enforcement agencies who were present in Defendant Jewell's home conducting a search at the time that he was questioned. As in *Craigland*, this factor ways in favor of holding that the defendant was in custody for the purposes of *Miranda.*

As to restraint, in *Craighead* the suspect was not handcuffed or physically restrained. *Id.* at 1086. On this factor, more similar is the case of *United States v. Revels*, 510 F.3d 1269 (10th Cir. 2007), *cited with approval by United States v. Craighead, supra*, 539 F.3d at 1084, 1085. In *Revels*, as in the instant case, the police handcuffed the suspect at the time of first arriving at the house and then, after the home had been entered by a number of police officers, the handcuffs were removed. 510 F.3d at 1270-71. The court found that the initial handcuffing contributed to the police-dominated character of the setting and contributed to the suspect's reasonable belief that she was not free to leave. 510 F.3d at 1275-76, *cited with approval by United States v. Craighead, supra,* 539 F.3d at 1085. In the instant case, when Defendant Jewell answered the door, he was immediately placed in handcuffs at the direction of the officer who would subsequently interrogate him. [TPJ-00038.] This act necessarily contributed substantially to the defendant's sense that while interrogated by this officer he was not free to leave, even though the handcuffs had been removed. This factor, too, weighs in favor of holding that the defendant was in custody.

The third factor considered by the court in *Craighead* was whether the individual was isolated from others. *United States v. Craighead, supra,* 539 F.3d at 1086-87. In *Craighead,* although the suspect was not aware of his role, present in the house at the time of the interrogation was a person who was there specifically to provide him emotional support. *Id.* at 1078, 1087. In the instant case, Defendant Jewell was alone with a house full of police officers. This factor, too, weighs in favor of holding that the defendant would not reasonably feel free to terminate the interview and leave.

The fourth factor considered by the court in *Craighead* was whether the individual was told that the questioning was voluntary and that he was free to terminate the interview and leave. *Id.* at 1087. In *Craighead*, the suspect was told exactly that and the court held that while not determinative, it did

weigh in favor of finding that the person was not in custody. *Id.* at 1087-88. In the instant case, however, the defendant was told no such thing. [*Cf.* TPJ-00038.] Accordingly, unlike *Craighead*, this factor weighs in favor of finding that the defendant would not reasonably feel free to leave.

Because each of the relevant factors weighs in favor of finding that the defendant was in custody, there should be little dispute in the instant case that *Miranda* warnings were required before the defendant was question, yet none were given. For this reason, appellant's statements should be excluded.

**2. Because the defendant invoked his right to counsel, any subsequent statements in response to questions from the interrogating officer should be excluded from evidence.**

Under *Miranda*, when a person being questioned invokes the right to counsel, questioning must stop.

> If [a person] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

*Miranda v. Arizona*, *supra*, 384 U.S. at 444-45. When a person had invoked the right to counsel, the police may not initiate questioning later. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The "interrogation must case until an attorney is present." *Miranda*, *supra*, 384 U.S. at 474.

There is an exception to the requirements of *Miranda* for "routine booking question[s]." *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). That exception covers information such as "name, address, height, weight, eye color, date of birth, and current age," and similar "biographical data necessary to complete booking or pretrial services." *Ibid.* [internal quotation marks and citation omitted].

In the instant case, the question regarding the defendant's travel plans was not of that kind and does not fall within the routine booking exception. Booking may not lawfully be used as a ruse for interrogation. *See Id.* at 592-600.

Any answers to questions other than those that were the biographical data necessary to complete booking should be excluded as in violation of the Fifth Amendment and *Miranda v. Arizona*.

## CONCLUSION

For the foregoing reasons, the court should exclude from evidence statements made by the appellant to police on November 18, 2010, at his home and at the police station.

Dated: Respectfully submitted,

_ /s/_____________ ______

DEBORAH G. LEVINE
Attorney for Defendant
THOMAS PEREZ JEWELL